# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| CARLSON, INC., | ) | Case No. 0:10-cv-03410 (JNE/JJG) |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | **PUBLICLY FILED VERSION** |
| | ) | **CONFIDENTIAL INFORMATION** |
| **INTERNATIONAL BUSINESS** | ) | **REDACTED PURSUANT TO** |
| **MACHINES CORPORATION,** | ) | **COURT ORDER** |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF INTERNATIONAL BUSINESS MACHINES CORPORATION'S MOTION TO DISMISS THE COMPLAINT

/s/ Jerry W. Blackwell
Jerry W. Blackwell (186867)
Alyssa L. Rebensdorf (296478)
BLACKWELL BURKE P.A.
431 South Seventh Street, Suite 2500
Minneapolis, MN 55415
Tel: (612) 343-3200
Fax: (612) 343-3205

Steven D. McCormick, P.C. (pro hac vice)
Anne McClain Sidrys, P.C. (pro hac vice)
Christa C. Cottrell (pro hac vice)
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL 60654

*Attorneys for Defendant*
*International Business Machines Corp.*

September 7, 2010

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...........................................................................................................1

FACTUAL BACKGROUND ...........................................................................................4

    A.    Parties' Master Services Agreement (MSA)...........................................4

    B.    ████████████████████████████ .........................5

    C.    Carlson Refuses To Pay IBM $13 Million Due And Brings This  Lawsuit. ...........6

ARGUMENT ...................................................................................................................7

I.     CARLSON HAS NOT COMPLIED WITH ITS DISPUTE RESOLUTION
     OBLIGATION. ...................................................................................................7

II.    ████████████████████████ ...........................................10

III.    CARLSON'S "BREACH OF CODE OF ETHICS," "BREACH OF BEST
      PRACTICES," AND "OVERCHARGES" ALLEGATIONS SHOULD BE
      DISMISSED. ......................................................................................................12

IV.    CARLSON'S FRAUD IN THE INDUCEMENT AND FRAUD IN
      PERFORMANCE CLAIMS FAIL. .....................................................................12

    A.    Carlson Has Not Pled Its Fraud Claims With Sufficient Particularity...............13

    B.    Carlson's Fraudulent Inducement Claim Fails As A Matter Of Law. ...................16

    C.    "Fraud In Performance" Is Not A Recognized Cause Of Action. .........................19

V.     CARLSON'S FIDUCIARY DUTY CLAIMS SHOULD BE DISMISSED. ....................19

    A.    IBM Was Not Carlson's Fiduciary. ...................................................................20

    B.    Carlson Did Not Plead Fraud With Particularity. ...............................................22

VI.    CARLSON'S DECLARATORY JUDGMENT CLAIM SHOULD BE
      DISMISSED. ......................................................................................................23

CONCLUSION.................................................................................................................25

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Am. Italian Pasta Co. v. New World Pasta Co.,*
371 F.3d 387 (8th Cir. 2004) ...................................................................... 16

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)............................................................................................ 7

*Bernstein v. Extendicare Health Servs., Inc.,*
653 F. Supp. 2d 939 (D. Minn. 2009)........................................................... 16

*Bray Int'l, Inc. v. Collings,*
2006 WL 1751892 (D. Minn. June 23, 2006)................................................ 15

*Cameo Homes v. Kraus-Anderson Constr. Co.,*
394 F.3d 1084 (8th Cir. 2005) ........................................................................ 9

*Carlson Holdings, Inc. v. NAFCO Ins. Co.,*
205 F. Supp. 2d 1069 (D. Minn. 2001).......................................................... 23

*Children's Broad. Corp. v. Walt Disney Co.,*
245 F.3d 1008 (8th Cir. 2001) ................................................................. 20, 21

*Commercial Prop. Invs., Inc. v. Quality Inns Int'l, Inc.,*
61 F.3d 639 (8th Cir. 1995) ........................................................................... 23

*Cygnus Therapeutics Sys. v. ALZA Corp.,*
92 F.3d 1153 (Fed. Cir. 1996) ....................................................................... 24

*D.A.B. v. Brown,*
570 N.W.2d 168 (Minn. App. 1997) .............................................................. 21

*Gen-Probe, Inc. v. Vysis, Inc.,*
359 F.3d 1376 (Fed. Cir. 2004) ..................................................................... 24

*Great Plains Trust Co. v. Union Pacific R.R. Co.,*
492 F.3d 986 (8th Cir. 2007) ............................................. 13, 14, 15, 23

*Hiland Dairy, Inc. v. Kroger Co.,*
402 F.2d 968 (8th Cir. 1968) ........................................................................... 7

*Hunter v. Ford Motor Co.,*
2009 WL 2215010 (D. Minn. July 21, 2009) ................................................ 15

*In re Am. Commercial Lines, Inc.,*
781 F.2d 114 (8th Cir. 1985) ......................................................................... 25

*In re Koelfgen,*
87 B.R. 993 (Bankr. D. Minn. 1998) ............................................................. 20

*Joe v. First Bank Syst., Inc.,*
    202 F.3d 1067 (8th Cir. 2000) ........................................................................... 11

*Johnson v. Peterson,*
    734 N.W.2d 275 (Minn. App. 2007) .............................................................. 12, 19

*LensCrafters, Inc. v. Vision World, Inc.,*
    943 F. Supp. 1481 (D. Minn. 1996)..................................................................... 17

*Martens v. Minn. Mining & Mfg. Co.,*
    616 N.W.2d 732 (Minn. 2000) ............................................................... 15, 17, 18

*Mattes v. ABC Plastics, Inc.,*
    323 F.3d 695 (8th Cir. 2003) ................................................................................ 4

*MedImmune, Inc. v. Genentech, Inc.,*
    549 U.S. 118 (2007)........................................................................................... 24

*Metro Motors, LLC v. Nissan Motor Corp. in USA,*
    170 F. Supp. 2d 888 (D. Minn. 2001).................................................................. 25

*Minn. Timber Producers Ass'n, Inc. v. Am. Mut. Ins. Co. of Boston,*
    766 F.2d 1261 (8th Cir. 1985) ........................................................................... 21

*Nelson v. Meshbesher, Singer & Spence, Ltd.,*
    1989 WL 131600 (Minn. App. 1989).................................................................. 17

*Nobelpharma AB v. Implant Innovations, Inc.,*
    141 F.3d 1059 (Fed. Cir. 1998) ......................................................................... 24

*Peterson-Price v. U.S. Bank Nat'l Ass'n,*
    2010 WL 1782188 (D. Minn. May 4, 2010)......................................................... 16

*Riley v. Cordis Corp.,*
    625 F. Supp. 2d 769 (D. Minn. 2009).................................................................. 16

*St. Paul Fire & Marine Ins. Co. v. A.P.I., Inc.,*
    738 N.W.2d 401 (Minn. App. 2007) .................................................................... 21

*Stefanyshyn v. Shafer Contracting Co., Inc.,*
    2005 WL 1277806 (D. Minn. May 26, 2005)....................................................... 11

*Trembath v. Meritplan Ins. Co.,*
    2009 WL 2147112 (M.D. Fla. July 16, 2009) ........................................................ 9

*United States ex rel. Alsaker v. CentraCare Health Sys., Inc.,*
    2002 WL 1285089 (D. Minn. June 5, 2002)......................................................... 14

*United States ex rel. Joshi v. St. Luke's Hosp., Inc.,*
    441 F.3d 552 (8th Cir. 2006) ............................................................................. 16

*Valspar Refinish, Inc. v. Gaylord's, Inc.,*
    764 N.W.2d 359 (Minn. 2009) ................................................................ 9, 17, 18, 19

*Westcott v. City of Omaha,*
   901 F.2d 1486 (8th Cir. 1990) ............................................................ 7, 14

*Westfield Ins. Co. v. Robinson Outdoors, Inc.,*
   2010 WL 2399547 (D. Minn. May 24, 2010) .................................... 12, 19

*Zehrer v. Helland,*
   1998 WL 346651 (Minn. App. 1998) ....................................................... 18

### Statutes

28 U.S.C. § 2201 ........................................................................................ 24

### Rules

Fed. R. Civ. P. 12(b)(6) .............................................................................. 19

Fed. R. Civ. P. 9(b) ............................................................................. passim

**INTRODUCTION**

On September 1, 2005, Carlson, Inc. and International Business Machines Corporation (IBM) entered into a contract (Master Services Agreement, or "MSA") in which IBM agreed to provide information technology and business process outsourcing services for a ten-year period.   In its Complaint, Carlson accuses IBM of breaching the MSA and committing fraud while performing its obligations.  Tellingly, Carlson does not attach the MSA to its Complaint – not even the key commercial portions directly at issue in the Complaint.    Nor does Carlson mention that the MSA and its Amendments prescribe: (i) when legal claims may be brought, (ii) what claims may be brought, (iii) the nature of the parties' relationship, (iv) what damages may be sought, and (v) when a party may seek a setoff.   Carlson also glosses over the fact that it currently owes IBM more than $13 million under the MSA, and that it was only after IBM's demand for payment that Carlson's claims of breach surfaced.

Once the Complaint is viewed through the lens of the MSA, it becomes obvious why Carlson chose to ignore it – the MSA and its Amendments bar most of Carlson's claims.  For example, Section 19.1 of the MSA provides that Carlson must participate in mandatory informal dispute resolution procedures prior to filing a lawsuit.   It has not done so. ███████████████████████████████████████████████

███████████████████████████

Carlson's Complaint suffers from other defects as well.  Carlson invents causes of action not recognized by Minnesota law.  Carlson also devotes pages of its Complaint to

empty, conclusory allegations legally insufficient to state a claim.  Carlson's Complaint should be dismissed for the following reasons:

- *First*, Carlson's Complaint is premature since the parties did not engage in an informal dispute resolution process as required by Section 19.1 of the MSA.

███████████████████████████████████████████████████████████████

- *Third*, Carlson's fraud claims do not meet the heightened pleading requirements of Rule 9(b).

- *Fourth*, Carlson's fraudulent inducement claim fails because Carlson has not adequately pled fraudulent representations by IBM.

- *Fifth*, certain of Carlson's claims are not recognized by Minnesota law, including claims for "fraud in performance" and "breach of code of ethics."

- *Sixth*, Carlson's fiduciary duty claim cannot stand as the MSA makes clear that IBM is not Carlson's fiduciary and because IBM is not Carlson's fiduciary as a matter of law.

- *Seventh*, Carlson's request for declaratory judgment that the $13 million it owes IBM be "set off" against a possible judgment in its favor is not permitted under either the MSA or the Declaratory Judgment Act.

As shown below, Carlson's claims fail for several independent reasons:

| | Failure To Engage In Informal Dispute Resolution Process (MSA § 19) | ███ | ███ | Failure To Plead Fraud With Particularity | Failure To Plead Actionable Representation | Parties Are Not Fiduciaries (MSA § 8.2) | Cause Of Action Is Not Recognized | Dispute Is Not Ripe |
|---|---|---|---|---|---|---|---|---|
| **Count I:** Fraudulent Inducement | ✓ | ✓ | | ✓ | ✓ | | | |
| **Count II:** Fraud in Performance | ✓ | ✓ | | ✓ | | | ✓ | |
| **Count III:** Breach of Contract | ✓ | ✓ | ✓ | | | | | |
| **Count III:** Breach of Code of Ethics/ Best Practices | ✓ | ✓ | ✓ | | | | ✓ | |
| **Count IV:** Fraudulent Inducement Into a Fiduciary Relationship | ✓ | ✓ | | ✓ | ✓ | ✓ | | |
| **Count IV:** Fraudulent Breach of Fiduciary Duties | ✓ | ✓ | | ✓ | | ✓ | | |
| **Count V:** Declaratory Judgment | ✓ | ✓ | ✓ | | | | | ✓ |

3

## FACTUAL BACKGROUND

In the Fall of 2004, Carlson began searching for a company to provide certain technological and business process outsourcing services.  (Ex. A to Compl. at 1)  As part of this search, Carlson issued a "Request for Information" and "Request for Proposal" to several outsourcing providers.  (*Id.*; Compl. ¶ 10)  IBM was one of the companies that responded.   In addition to its own financial and technology staff, Carlson hired independent expert consultants to evaluate IBM and other potential service providers.  (Ex. A to Compl. at 1–2)  Following this exhaustive process, Carlson selected IBM to be its service provider.  (*Id.*)

### A.    Parties' Master Services Agreement (MSA).

On September 1, 2005, after "extensive negotiations, discussions and due diligence," Carlson and IBM entered into the Master Services Agreement in which IBM agreed to provide information technology and business process outsourcing services to Carlson for a ten-year period.  (MSA §§ 3, 4, attached hereto as Ex. 1)[1]  Among other things, the 153-page MSA, together with its Schedules and Exhibits, describes the various services IBM was to perform for Carlson, lists key employees, explains invoicing and payment procedures, and defines the legal obligations to each other.  (*Id.* §§ 4, 8, 12, 16–18)

---

[1] In deciding this Motion, the Court may consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading."  *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 698 n.4 (8th Cir. 2003).   Therefore, IBM has attached hereto the MSA (Ex. 1) as well as the critical amendments to the MSA (Exs. 2–3).

Several provisions of the MSA are important to this Motion:

- **Informal Dispute Resolution.** Under Section 19.1 of the MSA, the parties must attempt to informally resolve their dispute *"prior to the initiation of formal dispute resolution* procedures with respect to any dispute." (MSA § 19.1 (emphasis added), Ex. 1) Section 19.1 imposes a number of pre-suit informal dispute resolution requirements including a requirement that senior executives "discuss the problem and negotiate in good faith in an effort to resolve the dispute without the necessity of any formal proceeding." (*Id.*)

- **Independent Contractor.** In Section 8.2, the parties agreed they "intend to create an independent contractor relationship" and that they intend for nothing in the agreement to operate or be construed as making them "partners, joint venturers, principals, joint employers, agents or employees of or with the other." (MSA § 8.2(a), Ex. 1)

- **Setoff.** In Section 12.3, the parties agreed that Carlson may only seek a setoff against an "amount that IBM is obligated to pay Carlson hereunder." (MSA § 12.3, Ex. 1)

████████████████████████████████████████████████████
████████

Carlson's Complaint is focused on two types of services IBM provided: (i) information technology outsourcing (ITO) services and (ii) administrative services in support of finance and accounting operations (F&A). (*See, e.g.,* Compl. ¶¶ 11, 16, 17, 20, 21, 29)   In 2007, the parties mutually agreed to terminate all F&A services and certain ITO functions. (*Id.* ¶ 16) ████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████
████████████████████████████████████████



**C.   Carlson Refuses To Pay IBM $13 Million Due And Brings This Lawsuit.**

In 2009, Carlson notified IBM that it was terminating IBM's remaining services under the MSA.  (Compl. ¶¶ 16, 23)  Upon receiving notice of Carlson's intent to terminate, IBM sought the payment of approximately $13 million due under the MSA.  (*Id.* at ¶¶ 23, 62–63; Ex. A to Compl. at 15)  To date, Carlson has not paid IBM any of the $13 million it owes IBM.[2]  (Compl. at ¶¶ 23, 62–63)

Carlson responded to IBM's invoice for $13 million by sending IBM a letter claiming more than $300 million in purported "damages" and threatening to bring a lawsuit.  (Ex. A to Compl. at 13)   In that May 14, 2010 letter, Carlson claimed it was willing to "meet with IBM to attempt to resolve whatever dispute may exist and jointly engage a mediator."  (*Id.* at 15)  On June 17, 2010, IBM accepted Carlson's offer to meet.[3]  (Compl. ¶ 23; IBM 6/17/10 Letter to Carlson, Ex. 4)  Indeed, IBM designated its corporate officer to engage in the dispute resolution process and asked Carlson to contact

---

[2] Pursuant to the MSA, Carlson has placed $8.2 million of the amount owed to IBM in escrow.  (Compl. ¶ 63; MSA § 12.4, Ex. 1)

[3] As explained in footnote 1, the Court may consider documents that Carlson refers to in its Complaint but does not attach.  Thus, IBM attaches its June 17, 2010 letter to Carlson, which Carlson describes in paragraph 23 of its Complaint.  Notably, Carlson does not refer to the other three IBM communications in which IBM offered to meet with Carlson.

IBM to "coordinate a time mutually convenient for both parties to meet." (IBM 6/17/10 Letter to Carlson, Ex. 4)  Rather than accept IBM's offer to meet, Carlson served IBM with its Complaint.

## ARGUMENT

To survive a motion to dismiss, a Complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Such motions "can serve a useful purpose in disposing of legal issues with the minimum of time and expense to the interested parties." *Hiland Dairy, Inc. v. Kroger Co.*, 402 F.2d 968, 973 (8th Cir. 1968), *cert. denied*, 395 U.S. 961 (1969).  While the Court must accept the Complaint's factual allegations as true, it must not "blindly accept the legal conclusions drawn by the pleader from the facts." *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).

## I.   CARLSON HAS NOT COMPLIED WITH ITS DISPUTE RESOLUTION OBLIGATION.

In the MSA, Carlson and IBM contemplated that disputes might arise between them.  Accordingly, they agreed to participate in informal dispute resolution procedures prior to initiating a lawsuit.  The MSA provides:

> ***Prior to the initiation of formal dispute resolution*** procedures with respect to any dispute . . . the Parties ***shall*** first attempt to resolve such dispute informally.  (MSA § 19.1 (emphasis added), Ex. 1)

Section 19.1 sets forth, in detail, the procedures the parties must follow.  These include: (i) "the Carlson Project Executive and the IBM Account Executive shall attempt in good faith to resolve all disputes"; (ii) if they are unable to resolve the dispute, it may be

referred to senior corporate executives as well as a "neutral third party"; (iii) "designated senior corporate executives will confer as often as they deem reasonably necessary in order to gather and furnish to the other all non-privileged information with respect to the matter in issue which the Parties believe to be appropriate and germane in connection with its resolution"; and (iv) " the designated senior corporate executives shall discuss the problem and negotiate in good faith in an effort to resolve the dispute without the necessity of formal proceeding." (MSA § 19.1, Ex. 1)

While Carlson does not dispute that Section 19.1 imposes these pre-suit requirements, it asserts that it has "complied with section 19" and IBM has not. (Compl. ¶ 23) Carlson's claim is not supported by the facts it has pled. In its Complaint, Carlson refers to and attaches its 48-page demand letter seeking damages and asking IBM to meet. (*Id.*; Ex. A to Compl.) Carlson also *refers to, but does not attach,* IBM's response to Carlson's demand letter. In IBM's response, IBM states that it is willing to meet with Carlson in accordance with the MSA:

> [W]ithout waiving any rights or defenses IBM may have under the MSA or otherwise and in an effort to resolve this dispute in good faith, *IBM is willing to participate in the dispute resolution process set forth in Section 19.1 of the MSA*. IBM has designated Gene Byrne, General Manager, Finance and Accounting Solutions, as its corporate representative to engage in the dispute resolution process with Carlson's chief financial officer. Although he does not hold the particular title specified in Section 19.1(b), Mr. Byrne is an equivalent level executive, is familiar with the type of Services provided by IBM to Carlson and is in the best position to engage in resolution discussions on behalf of IBM.

> Please contact me at 914-766-4019 to coordinate a time mutually convenient for both parties to meet.  (IBM 6/17/10 Letter to Carlson (emphasis added), Ex. 4)

Given IBM's response, Carlson does not and cannot complain that IBM refused to meet, so instead it alleges that IBM did not act in "good faith" because IBM sent its reply letter to Carlson in 31 days, instead of the 30 days that Carlson demanded.  (Compl. ¶ 23) Critically, there is no 30-day response time requirement in the MSA, but rather Carlson unilaterally seeks to impose an arbitrary 30-day cut-off.  Carlson's further implication that IBM somehow acted in bad faith by not including Carlson Hotels in its annual RFP process is irrelevant – that RFP process has absolutely nothing to do with the MSA. IBM's response to Carlson's demand letter was a good-faith attempt to comply with the parties' contract and resolve this dispute without litigation.

Where, as here, a party fails to fulfill its pre-suit contractual obligations, courts routinely dismiss or stay the action.  *See, e.g., Cameo Homes v. Kraus-Anderson Constr. Co.*, 394 F.3d 1084, 1088 (8th Cir. 2005) (failure to give pre-suit notice as "required by the contract" resulted in dismissal); *Valspar Refinish, Inc. v. Gaylord's, Inc.*, 764 N.W.2d 359, 364–65 (Minn. 2009) (where anticipated by contract, "the failure to give written notice bars a subsequent claim"); *see also Trembath v. Meritplan Ins. Co.*, 2009 WL 2147112, at *2 (M.D. Fla. July 16, 2009) (ordering parties to mediate as required by contract and noting "public policy is fostered by enforcing the mediation provision").  Because Carlson did not satisfy the MSA requirement to engage in the dispute resolution process, its Complaint should be dismissed.

Carlson's allegations center around two types of services provided by IBM: (i) information technology outsourcing (ITO) services and (ii) administrative services in support of finance and accounting operations (F&A).  (*See, e.g.*, Compl. ¶¶ 11, 16, 17, 20, 21, 29)



███████████████████████████████████████

███████████████████████████████████████

████████████████████████████

### III.   CARLSON'S "BREACH OF CODE OF ETHICS," "BREACH OF BEST PRACTICES," AND "OVERCHARGES" ALLEGATIONS SHOULD BE DISMISSED.

Carlson appears to allege claims for "breach of code of ethics," "breach of best practices," and "overcharges." (Compl. Count III)  To the extent Carlson is alleging something different from and in addition to its breach of contract claim, these causes of action should be dismissed for the reasons set forth above, but also because breach of "code of ethics," "best practices" and "overcharges" are not recognized causes of action under Minnesota law. *See, e.g.*, *Westfield Ins. Co. v. Robinson Outdoors, Inc.*, 2010 WL 2399547, at *3 (D. Minn. May 24, 2010) (dismissing claim where "Minnesota law does not recognize [the] cause of action"), *report and recommendation adopted*, 2010 WL 2399382 (D. Minn. 2010); *Johnson v. Peterson*, 734 N.W.2d 275, 277 (Minn. App. 2007).  Indeed, no Minnesota statute or case recognizes such causes.

### IV.   CARLSON'S FRAUD IN THE INDUCEMENT AND FRAUD IN PERFORMANCE CLAIMS FAIL.

███████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████

███████████████████████████████   *First*, Carlson does

not plead its fraud claims with the requisite particularity. *Second*, Carlson's fraudulent inducement claim fails for the additional reason that Carlson has not pled any misrepresentations by IBM. *Finally*, Carlson's "fraud in the performance" claim is not a recognized cause of action under Minnesota law.

## A.   Carlson Has Not Pled Its Fraud Claims With Sufficient Particularity.

Federal Rule of Civil Procedure 9(b) requires that fraud allegations "state with particularity the circumstances constituting fraud or mistake." This means a plaintiff must plead the "who, what, when, where, and how: the first paragraph of any newspaper story." *Great Plains Trust Co. v. Union Pacific R. R. Co.*, 492 F.3d 986, 995 (8th Cir. 2007) (internal quotation omitted). And "because one of the main purposes of the rule is to facilitate a defendant's ability to respond and to prepare a defense to charges of fraud, conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." *Id.* at 996. Here, Carlson does not provide even the most basic facts to support its fraud allegations. Instead it paints with a wide brush, asking the Court to scour through the pleadings to guess *which* IBM statements might be fraudulent, *why* they allegedly are, *who* knew they were, and *who* might have said them.

*First*, Carlson does not plead which of IBM's statements were allegedly false. In support of its fraudulent inducement claim Carlson alleges, generally, that IBM's representations "described above" were false, without citing to a specific paragraph or providing particular statements. (Compl. ¶¶ 26, 32) Preceding these allegations are more than ten pages of pleading. Carlson asks this Court – and IBM, which must defend itself against these fraud allegations – to guess which statements might be part of its fraudulent

13

inducement claim.  The allegations in support of Carlson's fraud in performance claim are even less clear.  Carlson merely alleges that IBM "made false material representations of fact, by omissions, to Carlson in its monthly invoices that IBM sent to Carlson from *2006 through 2009*." (*Id.* ¶ 32 (emphasis added))  Carlson omits the specifics necessary for IBM to even respond to this allegation.  Namely, Carlson does not state (1) the date of any individual invoice; (2) the amount of any individual invoice; (3) the specific statement on the invoice that is a false representation of fact by omission; or (4) any other information that would identify what Carlson claims is fraudulent.  The law simply does not allow a plaintiff to point to four years of invoices and allege that something in them is fraudulent, or even that everything in them is fraudulent, without providing more information.  *See United States ex rel. Alsaker v. CentraCare Health Sys., Inc.*, 2002 WL 1285089, at *3–4 (D. Minn. June 5, 2002) (the burden to plead fraud allegations rests with the plaintiff, not the defendant, even where plaintiffs allege a "general practice of fraud that covers an extensive period of time").

*Second*, Carlson fails to explain why it believes IBM's representations were false. Carlson instead merely makes the conclusory assertion that IBM's representations "described above were false." (*See* Compl. ¶ 26 (Count I), ¶ 32 (Count II))  This bare allegation, insufficient under any pleading standard, does not satisfy the heightened standard for pleading fraud.  *See Westcott*, 901 F.2d at 1488 (conclusory allegations need not and will not be taken as true); *Great Plains Trust Co.*, 492 F.3d at 995 (plaintiff must plead why representations were false and conclusory allegations are insufficient).

14

*Third*, Carlson does not allege who made the fraudulent statements. Instead, Carlson points to "IBM" – an international corporation employing hundreds of thousands of people – as making allegedly fraudulent statements. (*See, e.g.*, Compl. ¶ 9) To properly defend itself against these allegations, IBM must know which of its employees allegedly made misrepresentations to Carlson. *See Bray Int'l, Inc. v. Collings*, 2006 WL 1751892, at *3 (D. Minn. June 23, 2006) (dismissing a fraud allegation under Rule 9(b) because the plaintiff alleged that the defendants instructed their employees to make fraudulent misrepresentations, but failed to plead which employees actually made the statements); *see also Hunter v. Ford Motor Co.*, 2009 WL 2215010, at *3 (D. Minn. July 21, 2009).

*Fourth*, Carlson does not sufficiently plead scienter, a necessary element to establish fraud. *See Martens v. Minn. Mining & Mfg. Co.*, 616 N.W.2d 732, 747–48 (Minn. 2000) (dismissing a fraud allegation where the plaintiff did not allege that the defendant knew that its representations were false). Carlson merely alleges that "IBM either knew that the representations were false, and knew that the non-disclosures were misleading, when it made them or made the representations as of its own knowledge without knowing whether they were true or false." (Compl. ¶ 26) Carlson's conclusory recitation of the legal requirements for establishing scienter is not, alone, sufficient. Carlson does not, as it must, identify any specific statements, speakers, listeners, or reason why it believes that IBM knowingly made false statements. *See Martens*, 616 N.W.2d at 747; *Great Plains Trust Co.*, 492 F.3d at 995.

In sum, Carlson's attempt to plead "the tort of fraud" – █████████ ████████████████████████████████ fails and its fraud allegations should be dismissed. *See United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 557 (8th Cir. 2006) (granting motion to dismiss where plaintiff failed to allege fraud with specificity); *Peterson-Price v. U.S. Bank Nat'l Ass'n*, 2010 WL 1782188, at *12 (D. Minn. May 4, 2010) (dismissing Complaint where it "simply provides labels and conclusions, and a formulaic recitation, of the elements of fraudulent misrepresentation and negligent misrepresentation and, thus, does not meet the particularity requirements of Rule 9(b)"); *Riley v. Cordis Corp.*, 625 F. Supp. 2d 769, 786–87 (D. Minn. 2009).

### B.    Carlson's Fraudulent Inducement Claim Fails As A Matter Of Law.

Carlson's fraudulent inducement claim fails for the following additional reasons. *First*, the statements quoted by Carlson are nothing more than "subjective statements of superiority" that are not actionable under Minnesota law. *Bernstein v. Extendicare Health Servs., Inc.*, 653 F. Supp. 2d 939, 942–43 (D. Minn. 2009) (upholding grant of motion to dismiss plaintiffs' consumer fraud claim where "statements of superiority" relied on were "akin to puffery"). Indeed, it is well-settled that general assertions of "quality" are not actionable because "quality" is a vague, subjective concept. *Id.* at 943 (citing *Am. Italian Pasta Co. v. New World Pasta Co.*, 371 F.3d 387, 393 (8th Cir. 2004)).

The only quoted representations in Carlson's Complaint are found at Paragraphs 9 and 13 in the "Factual Background" section. The statements were made by IBM in response to Carlson's RFI and RFP, and they include statements such as:

- "IBM is the only company able to provide leading expertise in all of the scope areas under consideration."

- "IBM's capabilities . . . can not be surpassed . . . ."

- "Success in achieving target savings and results is not an option with IBM; it is a given."

- "For nearly 100 years, the IBM name has stood for trust and integrity in all that we do."

- The services shall be executed in accordance with "the best practices of leading providers of services that are the same as or similar to the Services."

(Compl. ¶¶ 9, 13) IBM's statements are textbook examples of inactionable statements of "superiority" and "quality." *See, e.g., LensCrafters, Inc. v. Vision World, Inc.*, 943 F. Supp. 1481, 1498 (D. Minn. 1996) (a party who states it uses the "most advanced equipment available" is not making a fraudulent misrepresentation); *Nelson v. Meshbesher, Singer & Spence, Ltd.*, 1989 WL 131600 (Minn. App. 1989) (party must allege more than statements of superiority in order to state a fraudulent inducement claim); *Valspar Refinish v. Gaylord's, Inc.*, 764 N.W.2d 359, 368 (Minn. 2009) (same). Under established Minnesota law, these statements cannot form the basis of a fraudulent inducement claim. *See, e.g., Bernstein*, 653 F. Supp. 2d at 942–43 (upholding dismissal of plaintiffs' consumer fraud claim where statements relied upon were "akin to puffery").

*Second*, Carlson relies on forward-looking statements but does not allege any facts establishing that IBM had no intention to fulfill its promises at the time the statements were made. *See Martens*, 616 N.W.2d at 747 (granting motion to dismiss where "the complaint is devoid of any specific claim that appellant's statements were representations the appellant knew were false or had no intention of fulfilling at the time they were

17

made"). Carlson points to the following alleged IBM statements in response to its Request for Proposals:

- "With respect to F&A . . . we would continue the transformation of the finance and accounting operations . . . ."

- "IBM would provide Carlson with a solution that fully meets your overall objectives."

- IBM's proposed solution will accelerate the transformation of Carlson's IT operations." (Compl. ¶ 9)

Carlson does not allege, as it must, that IBM had no intention of fulfilling these promises or believed them to be false when made. *See Martens*, 616 N.W.2d at 747. Notably, it does not matter whether the promise was, in fact, ever fulfilled. *Valspar*, 764 N.W.2d 359 at 368–69 (stating the "well-settled rule that a representation or expectation as to future acts is not a sufficient basis to support an action for fraud merely because the represented act or event did not take place").

*Third*, Carlson has not pled that it reasonably relied on IBM's representations prior to entering into the MSA. As the Minnesota Supreme Court recently explained, "when a party conducts an independent factual investigation before it enters into a commercial transaction, that party cannot later claim that it reasonably relied on the alleged misrepresentation." *Valspar*, 764 N.W.2d at 369. In *Valspar*, the plaintiff could not establish reliance as a matter of law where the parties were "sophisticated business equals operating in a commercial setting" and the plaintiff conducted due diligence prior to executing the contract. *Id*; *see also Zehrer v. Helland*, 1998 WL 346651 (Minn. App. 1998) (party who conducts independent factual investigation is precluded from

18

establishing reliance).   Without question, Carlson and IBM are "sophisticated business equals operating in a commercial setting." *Valspar*, 764 N.W.2d at 369.   Carlson admits that it engaged a "leading consultant on outsourcing" who conducted "in-depth" due diligence of IBM, visiting IBM sites, and checking IBM's references, and that it "did not learn anything that called into question IBM's claims."   (Ex. A to Compl. at 7) Furthermore, the MSA itself states that Carlson and IBM "engaged in extensive negotiations, discussions and due diligence that have culminated in the formation of the contractual relationship."   (MSA Preamble, Ex. 1)   Because Carlson is a sophisticated business that conducted extensive investigations into IBM's representations, it cannot claim that it relied on them to its detriment. *See, e.g., Valspar*, 764 N.W.2d at 369.

### C.   "Fraud In Performance" Is Not A Recognized Cause Of Action.

In its Count II, Carlson alleges IBM committed "fraud in performance."   There is no recognized cause of action for "fraud in performance" under Minnesota law. Accordingly, Carlson's Count II should be dismissed.   Fed. R. Civ. P. 12(b)(6); *see, e.g., Westfield Ins. Co.*, 2010 WL 2399547, at *3; *Johnson*, 734 N.W.2d at 277.

### V.   CARLSON'S FIDUCIARY DUTY CLAIMS SHOULD BE DISMISSED.

Carlson claims IBM committed "fraudulent inducement into a fiduciary relationship and fraudulent breach of fiduciary duty." (Compl. Count IV) This allegation fails. ███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████ Moreover, Carlson contractually agreed that the parties were not fiduciaries.   (MSA §§ 8.2, 21.6, Ex. 1)   And finally, since

Carlson chose to plead this as a "fraud" claim, it is obligated under Rule 9(b) to support its allegations with specific facts. As with its other "fraud" claims, Carlson does not come close to satisfying that heightened pleading requirement.

### A.    IBM Was Not Carlson's Fiduciary.

Carlson's claim is contradicted by its contract with IBM. The MSA states:

> Except as otherwise expressly set forth in this Agreement, the Parties intend to create an **independent contractor relationship. Nothing in this Agreement shall operate or be construed as making (i) Carlson (or any Eligible Recipient) and (ii) IBM either partners, joint venturers, principals, joint employers, agents or employees of or with the other.** No officer, director, employee, agent, Affiliate, contractor or subcontractor retained by IBM to perform work on Carlson's behalf hereunder shall be deemed to be an officer, director, employee, agent, Affiliate, contractor or subcontractor of Carlson or the Eligible Recipients for any purpose. (MSA § 8.2 (emphasis added), Ex. 1)[5]

Minnesota law is clear that where as here the parties expressly disclaim a principal-agent relationship in a contract, they "preclude[] [a] claim for breach of fiduciary duties." *Children's Broad. Corp. v. Walt Disney Co.*, 245 F.3d 1008, 1022 (8th Cir. 2001); *In re Koelfgen*, 87 B.R. 993, 997 (Bankr. D. Minn. 1998) (fiduciary relationship was not created between the parties where the "Contract . . . expressly states the relationship 'shall be that of an Independent Contractor only'"). In *Children's Broadcasting*, for

---

[5] In Section 21.6, "Relationship of Parties," Carlson and IBM reiterate that "IBM, in furnishing services to Carlson and the Eligible Recipients hereunder, is acting as an independent contractor" and is "not an agent of Carlson." (MSA § 21.6, Ex. 1)

Furthermore, in Section 15.10(k) the parties also agreed that IBM was not required to provide "legal, tax or accounting services that would require professional licensing or any other legal, audit, tax or attest advice or services." (MSA § 15.10(k), Ex. 1)

example, the parties' contract similarly asserted, "Nothing contained in this Agreement shall create or be deemed to create any . . . *relationship of principal or agent* . . . it being understood that [the defendant] and [the plaintiff] shall perform all of their obligations hereunder as fully independent parties." 245 F.3d at 1022 (emphasis added). The Eighth Circuit held that such a disclaimer is binding and "precludes [a] claim for breach of fiduciary duties." *Id.*

Even beyond the contractual language, IBM is not Carlson's fiduciary under settled Minnesota law. As the Eighth Circuit has explained, a "fiduciary relationship exists when confidence is reposed on one side and there is resulting superiority and influence on the other." *Minn. Timber Producers Ass'n, Inc. v. Am. Mut. Ins. Co. of Boston*, 766 F.2d 1261, 1267 (8th Cir. 1985) (citation and quotation omitted)). "Ordinary business relationships may involve reliance on a professional, a degree of trust, and a duty of good faith, and yet not fall within the class of fiduciary relationships." *St. Paul Fire & Marine Ins. Co. v. A.P.I., Inc.*, 738 N.W.2d 401, 406 (Minn. App. 2007) ("we hold that the relationship between architect and client is not a fiduciary one"); *see also D.A.B. v. Brown*, 570 N.W.2d 168, 171 (Minn. App. 1997) (rejecting counsel's "creative characterization" of a medical malpractice claim as one of "breach of fiduciary duty" and dismissing claim). Where the parties deal with each other at an arm's-length basis and there is no reason to conclude that a fiduciary relationship was intended, courts will find no fiduciary relationship as a matter of law. *See Minn. Timber*, 766 F.2d at 1267–68.

Carlson has not alleged anything that would give rise to a fiduciary relationship. To the contrary, Carlson's Complaint highlights the parties' equal bargaining power.

(*See, e.g.*, Compl. ¶¶ 8, 11 (acknowledging Carlson conducted "due diligence" of IBM prior to entering into the MSA); MSA Preamble, Ex. 1 ("Carlson and IBM have engaged in extensive negotiations, discussions and due diligence that have culminated in the formation of the contractual relationship . . ."); Ex. A to Compl. at 1 ("Carlson engaged expert consultants, issued Requests for Information ("RFI"s) and Requests for Proposals ("RFP"s) to and conducted due diligence of several outsourcing providers."); *id.* ("Carlson comprised one of the world's largest business travel management companies"); *id.* at 3 n.1 ("The annual gross revenues of Carlson's separate businesses ranged, from tens of millions to ***tens of billions*** of dollars.") (emphasis added))

Under any interpretation of the pleadings, IBM owed no fiduciary duties to Carlson, and Count IV should be dismissed.

### B.    Carlson Did Not Plead Fraud With Particularity.

Carlson alleges that IBM induced Carlson into a fiduciary relationship and fraudulently breached its fiduciary duties. Neither claim is supported by the requisite specific allegations needed to survive a motion to dismiss. Indeed, of the nine paragraphs making up Count IV, the only paragraph that has anything to do with alleged fraudulent inducement is paragraph 53, which says:

> IBM . . . induced Carlson into [a] fiduciary relationship based on its claims of trustworthiness, capabilities and expertise, and the fraudulent inducement described above. IBM pulled Carlson into an arrangement through its fraudulent representations, by commission and by omission, where Carlson trusted IBM and paid IBM hundreds of millions of dollars based upon that trust. (Compl. ¶ 53)

As with Carlson's earlier fraudulent inducement pleadings, this allegation does not identify the alleged misrepresentations or omissions or state why they were fraudulent, who at IBM made them, to whom they were made, or even when they were made. *See Great Plains Trust Co.*, 492 F.3d at 995 (party pleading fraud must allege "who, what, when, where, and how").

The same lack of particularity exists in Carlson's "fraudulent breach of fiduciary duties" allegations. Carlson states that:

> IBM's breach of fiduciary duties includes, but is not limited to, IBM's fraudulent misrepresentations and non-disclosures regarding its capabilities to meet Carlson's specific goals and objectives and IBM's false Invoice billings to Carlson for services and products that had not been provided by IBM. The breaches of its fiduciary duties by IBM were fraudulent, willful, wanton and constitute intentional misconduct. (Compl. ¶ 54)

Again, Carlson does not plead the necessary who, what, where, when, and how required to satisfy Rule 9(b), and the claim must be dismissed. *Commercial Prop. Invs., Inc. v. Quality Inns Int'l, Inc.*, 61 F.3d 639, 644 (8th Cir. 1995).

## VI.   CARLSON'S DECLARATORY JUDGMENT CLAIM SHOULD BE DISMISSED.

Carlson seeks to use the Declaratory Judgment Act for permission to withhold funds that are admittedly due now to IBM pending conclusion (possibly years from now) of this litigation.[6] The MSA does not allow Carlson to set off amounts it owes to IBM

---

[6] Carlson demands relief under the Minnesota Declaratory Judgment Act. (Compl. ¶ 59) However, since this matter is in federal court under diversity jurisdiction, the Federal Declaratory Judgment Act is the applicable law. *See Carlson Holdings, Inc. v. NAFCO Ins. Co.*, 205 F. Supp. 2d 1069, 1074–75 (D. Minn. 2001) ("declaratory judgment acts

against an amount it may potentially obtain in litigation.   The MSA provides "with respect to any amount to be paid or reimbursed by Carlson hereunder, Carlson may set off against such any amount any amount that IBM is *obligated to pay Carlson* hereunder." (MSA § 12.3 (emphasis added), Ex. 1)  IBM is not obligated to pay Carlson anything under the MSA at this time.

Likewise, Carlson's request is premature under the Federal Declaratory Judgment Act.   That Act provides that courts may award declaratory judgment only if there is currently an "actual controversy." 28 U.S.C. § 2201; *see Cygnus Therapeutics Sys. v. ALZA Corp.*, 92 F.3d 1153, 1158 (Fed. Cir. 1996), *overruled on other grounds by Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059 (Fed. Cir. 1998).   The controversy must be "real and substantial" and "admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).[7]  Currently there is no actual controversy with respect to the $13 million Carlson owes IBM.   Carlson indisputably owes IBM $13 million and Carlson IBM owes Carlson, at this time, nothing.

Accordingly, Carlson's demand for declaratory judgment should be dismissed because the claim is not yet ripe.   Nor will it ever be ripe.   If this case proceeds, IBM will

---

are procedural rules and, thus, in a diversity case the Federal Declaratory Judgment Act should apply").

[7] Because the existence of an actual controversy is a question of subject matter jurisdiction, this issue may supply the basis for a motion to dismiss. *See Gen-Probe, Inc. v. Vysis, Inc.*, 359 F.3d 1376, 1379 (Fed. Cir. 2004).

counterclaim for the amount it is due and that legal claim will trump the equitable declaratory action. *See In re Am. Commercial Lines, Inc.*, 781 F.2d 114, 116 (8th Cir. 1985) (dismissing a declaratory judgment claim where it was uncertain that a party would ever have to pay any judgment arising from a barge accident); *Metro Motors, LLC v. Nissan Motor Corp. in USA*, 170 F. Supp. 2d 888, 890 (D. Minn. 2001).

**CONCLUSION**

For the foregoing reasons, IBM respectfully requests that this Court grant its Motion to Dismiss Carlson's Complaint and grant any other relief it deems just and proper.

Dated:  September 7, 2010                    Respectfully Submitted,

/s/ Jerry W. Blackwell
Jerry W. Blackwell (186867)
Alyssa L. Rebensdorf (296478)
BLACKWELL BURKE P.A.
431 South Seventh Street, Suite 2500
Minneapolis, MN 55415
Tel: (612) 343-3200
Fax: (612) 343-3205

and

Steven D. McCormick, P.C.
Anne McClain Sidrys, P.C.
Christa C. Cottrell
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL 60654

*Attorneys for Defendant International Business Machines Corp.*