## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Carlson, Inc.,

               Plaintiff,

v.

International Business Machines
Corporation,

               Defendant.

Case No. 0:10-cv-03410 (JNE/JJG)

**PUBLICLY FILED VERSION
CONFIDENTIAL INFORMATION
REDACTED PURSUANT TO
COURT ORDER**

## INTERNATIONAL BUSINESS MACHINES CORPORATION'S
## REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS

Jerry W. Blackwell (186867)
Alyssa L. Rebensdorf (296478)
BLACKWELL BURKE P.A.
431 South Seventh Street, Suite 2500
Minneapolis, MN 55415

Steve McCormick, P.C. (pro hac vice)
Anne McClain Sidrys, P.C. (pro hac vice)
Christa C. Cottrell (pro hac vice)
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL 60654

***Attorneys for Defendant
International Business Machines Corp.***

November 4, 2010

## TABLE OF CONTENTS

INTRODUCTION.................................................................................................1

ARGUMENT .....................................................................................................1

I.    CARLSON HAS NOT COMPLIED WITH MSA § 19.1. .......................1

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

III.    CARLSON'S FRAUD CLAIMS FAIL...............................................5

    A.    Carlson's Fraudulent Allegations Lack Specificity. ......................5

        1.    Carlson does not plead who made the statements. ...........6

        2.    Carlson does not plead which IBM statements were false or how.................................................................................6

        3.    Carlson does not plead when the fraudulent acts occurred. ..............7

    B.    Carlson Has Not Adequately Pled Scienter. ..................................9

        1.    Fraudulent inducement. ...................................................9

        2.    Fraud in performance ....................................................10

    C.    Carlson's Fraudulent Inducement Claim Fails For Additional Reasons. ......................................................................................11

        1.    Carlson alleges nonactionable statements of quality........11

        2.    Carlson has not alleged reasonable reliance. ...................13

IV.    CARLSON'S FIDUCIARY DUTY FRAUD CLAIM SHOULD BE DISMISSED.....................................................................................14

    A.    Carlson Failed To Plead Its Fraudulent Inducement And Fraudulent Breach Of Fiduciary Duties Claims With The Requisite Specificity. .........14

    B.    IBM Was Not Carlson's Fiduciary. .............................................15

        1.    The parties agreed they were not fiduciaries. ...................15

        2.    Minnesota law does not support a fiduciary relationship. ...............17

V.    CARLSON'S DECLARATORY JUDGMENT CLAIM IS NOT PERMITTED BY THE MSA. .....................................................19

CONCLUSION ...............................................................................................20

## TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal,*
129 S. Ct. 1937 (2008) ............................................................................... 10

*Axcan Scandipharm Inc. v. Ethex Corp.,*
585 F. Supp. 2d 1067 (D. Minn. 2007) ........................................................ 8

*Bale v. Dean Witter Reynolds, Inc.,*
627 F. Supp. 650 (D. Minn. 1986) ............................................................... 8

*Bernstein v. Extendicare Health Servs., Inc.,*
653 F. Supp. 2d 939 (D. Minn. 2009) .................................................. 11, 12

*Best Buy Stores, L.P. v. Developers Diversified Realty Corp., LLC,*
636 F. Supp. 2d 869 (D. Minn. 2009) .................................................. 15, 16

*BJC Health Sys. v. Columbia Cas. Co.,*
348 F.3d 685 (8th Cir. 2003) ....................................................................... 2

*Bloomquist v. Wisdom Dev. Grp.,*
2009 Minn. App. LEXIS 296 (Minn. Ct. App. Jan. 13, 2009) .................... 17

*Busher v. Brown & Brown, Inc.,*
2009 LEXIS App. 955 (Minn. Ct. App. Aug. 25, 2009) ............................. 18

*Cameo Homes v. Kraus-Anderson Constr. Co.,*
394 F.3d 1084 (8th Cir. 2005) ..................................................................... 3

*Children's Broad. Corp. v. Walt Disney Co.,*
245 F.3d 1008 (8th Cir. 2001) .............................................................. 15, 16

*Clements Auto Co. v. Service Bureau Corp.,*
298 F. Supp. 115 (D. Minn. 1969) ............................................................. 12

*Clements Auto. Co. v. Serv. Bureau Corp.,*
444 F.2d 169 (8th Cir. 1971) ........................................................... 11, 12, 13

*Commercial Prop. Inv., Inc. v. Quality Inns Int'l,*
61 F.3d 639 (8th Cir. 1995) ......................................................................... 9

*Douros v. State Farm Fire & Cas. Co.,*
508 F. Supp. 2d 479 (E.D. Va. 2007) .......................................................... 6

*Dykes v. Sukup Mfg. Co.,*
781 N.W.2d 578 (Minn. 2010) ..................................................................... 4

*Evangelical Lutheran Church v. Spherion Workforce LLC,*
2005 U.S. Dist. LEXIS 8098 (D. Minn. May 4, 2005) ................................. 8

*Helleloid v. Indep. Sch. Dist. No. 361,*
149 F. Supp. 2d 863 (D. Minn. 2001) .......................................................... 6

*Hope v. Klabal,*
    457 F.3d 784 (8th Cir. 2006) ...................................................................... 17

*In re Am. Commercial Lines, Inc.,*
    781 F.2d 114 (8th Cir. 1985) ...................................................................... 19

*In re TMJ Implants Prods. Liab. Litig.,*
    872 F. Supp. 1019 (D. Minn. 1995)............................................................... 7

*Kriegel v. Bank of America, N.A.,*
    2010 WL 3169579 (D. Mass. Aug. 10, 2010) ............................................. 15

*Laysar v. State Farm Mut. Auto. Ins. Co.*
    2005 U.S. Dist. LEXIS 45252 (D. Minn. Aug. 25, 2005) .............................. 8

*LensCrafters, Inc. v. Vision World, Inc.,*
    943 F. Supp. 1481 (D. Minn. 1996)....................................................... 11, 12

*Lieberman v. A&W Restaurants, Inc.,*
    2003 WL 21252008 (D. Minn. May 28, 2003)............................................ 10

*Martens v. Minn. Mining & Mfg. Co.,*
    616 N.W.2d 732 (Minn. 2000) ............................................................ 6, 9, 10

*McGregor v. Uponor, Inc.,*
    2010 U.S. Dist. LEXIS 162 (D. Minn. Jan. 4, 2010)............................... 8, 10

*Metro Motors, LLC v. Nissan Motor Corp. in USA,*
    170 F. Supp. 2d 888 (D. Minn. 2001)......................................................... 19

*Morgan Distrib. Co., Inc. v. Unidynamic Corp.,*
    868 F.2d 992 (8th Cir. 1989) ........................................................................ 7

*Nelson v. Meshbesher, Singer & Spence, Ltd.,*
    1989 WL 131600 (Minn. Ct. App. Nov. 7, 1989) ............................. 11, 12, 14

*Northstar Indus., Inc. v. Merrill Lynch & Co., Inc.,*
    558 F. Supp. 2d 944 (D. Minn. 2008), *rev'd on other grounds*, 576 F.3d 827
    (8th Cir. 2009)...................................................................................... 17, 18

*Petters Co. Inc. v. Stayhealthy, Inc.,*
    2005 WL 1430295 (D. Minn. Mar. 7, 2005) ............................................... 17

*Ramada Franchise Sys., Inc. v. Tresprop, Ltd.,*
    188 F.R.D. 610 (D. Kan. 1999) .................................................................... 6

*RBC Dain Rauscher, Inc. v. Fed. Ins. Co.,*
    2003 WL 25836278 (D. Minn. Dec. 2, 2003) ........................................ 17, 18

*Resnick v. Life Time Fitness, Inc.,*
    2010 WL 2265869 (Minn. Ct. App. June 8, 2010)........................................ 5

*St. Paul Fire & Marine Ins. Co. v. A.P.I., Inc.*,
  738 N.W.2d 401 (Minn. Ct. App. 2007) ................................................ 18

*Stark v. Equitable Life Assur. Soc.*,
  285 N.W. 466 (Minn. 1939) ................................................................. 18

*Stefanyshyn v. Shafer Contracting Co., Inc.*,
  2005 WL 1277806 (D. Minn. May 26, 2005), *report and recommendation adopted*,
  2005 WL 1514134 (D. Minn. June 27, 2005), *aff'd*, 190 F. App. 521 (8th Cir. 2006)... 5

*Thomsen v. Famous Dave's of Am., Inc.*,
  606 F.3d 905 (8th Cir. 2010) ............................................................... 4

*Todd County v. Barlow Projects, Inc.*,
  2005 WL 1115479 (D. Minn. May 11, 2005) ........................................ 19

*Toombs v. Daniels*,
  361 N.W.2d 801 (Minn. 1985) ............................................................. 18

*Trooien v. Mansour*,
  608 F.3d 1020 (8th Cir. 2010) .......................................................... 7, 9

*U.S. ex rel. Joshi v. St. Luke's Hosp., Inc.*,
  441 F.3d 552 (8th Cir. 2006) ............................................................... 6

*United States ex rel. Alsaker v. CentraCare Health Sys., Inc.*,
  2002 WL 1285089 (D. Minn. June 5, 2002) .......................................... 8

*Valspar Refinish, Inc. v. Gaylord's, Inc.*,
  764 N.W.2d 359 (Minn. 2009) ........................................... 11, 12, 13, 14

*Wilson Group, Inc. v. Quorum Health Res., Inc.*,
  880 F. Supp. 416 (D.S.C. 1995) ........................................................... 4

*Yohannes v. Habtesilassie*,
  2008 WL 73715 (Minn. Ct. App. Jan. 4, 2008) ...................................... 5

*Zaun v. J.S.H. Inc.*,
  2010 WL 3862860 (D. Minn. Sept. 28, 2010) ...................................... 10

**Other Authorities**
18B Am. Jur. 2d *Corporations* § 1753 ..................................................... 2

## INTRODUCTION

Carlson's complaint of fraud and breach of contract cannot stand as a matter of law and should be dismissed for the following reasons. *First*, the Complaint should be dismissed in its entirety since Carlson did not comply with the pre-suit dispute resolution requirements set forth in the parties' Master Services Agreement (MSA). ███████

████████████████████████████████████████████

████████████████████████████████████████████

███████ *Third*, Carlson has not adequately pled any actionable fraud claim against IBM. *Finally*, by the terms of their agreement and under Minnesota law, IBM is not Carlson's fiduciary and Carlson's breach of fiduciary duty claim cannot stand.

## ARGUMENT

## I.     CARLSON HAS NOT COMPLIED WITH MSA § 19.1.

Carlson does not dispute that the parties are required to hold a dispute resolution meeting under the MSA before initiating a lawsuit. Nor does it dispute that IBM repeatedly offered to meet to discuss Carlson's claims and that Carlson refused to do so.[1] Carlson provides a list of excuses for its failure to comply with Section 19.1. None is valid.

Carlson first argues that it was not required to meet with IBM prior to bringing this lawsuit because IBM responded to Carlson's 48-page demand letter in 33 days, rather than within the 30-day response period Carlson had requested. (Resp. 43) In an attempt

---

[1]   Indeed, at the time Carlson filed its lawsuit, IBM was waiting for a response from Carlson to its letter requesting a meeting to discuss this dispute. (IBM 6/17/10 Letter to Carlson, IBM Ex. 4)

to justify its 30-day cutoff, Carlson argues that it was able to set its own "reasonable" deadline for IBM to respond to its letter under MSA § 19.1(a). Carlson not only misstates the language in Section 19.1(a), but ignores the relevant and controlling Section 19.1(b) provision. Section 19.1(a) provides that if the companies' project and account managers are unable to resolve a dispute in an amount of time either party deems reasonable, then the dispute should be "escalated" and referred to the companies' more senior executives as set forth in Section 19.1(b). Section 19.1(b) then requires the parties' designated senior executives to confer in an attempt to resolve the dispute. That provision, which Carlson has not satisfied, does not allow a party to impose its own deadline for completion, much less allow a party to disregard the process if an arbitrary deadline is not met.

Carlson next argues that IBM "breached and waived" its Section 19.1 rights because it did not include Carlson franchisee hotels in its Request for Proposals (RFP) for preferred hotel providers. Carlson's argument has no merit. The MSA does not impose any such precondition, nor does it mention the RFP process. Indeed, it is black-letter law that a corporation may decide with whom it conducts business. *See, e.g.*, 18B Am. Jur. 2d *Corporations* § 1753. Carlson's disagreement with IBM's business decision does not justify its failure to comply with its contractual obligations.[2]

---

[2] Carlson improperly attaches as Exhibit 10 to its Response an email – referenced nowhere in its Complaint – concerning IBM's RFP process. Although IBM fails to see how the email provides legal support for Carlson's claim, such evidence wholly "outside the pleadings" may not be considered on a motion to dismiss. *See BJC Health Sys. v. Columbia Cas. Co.*, 348 F.3d 685, 687 (8th Cir. 2003).

Finally, Carlson maintains that whether it complied with its pre-suit dispute resolution obligations is a factual matter to be decided at a later date.  (Resp. 46)  This, of course, misses the point:  the meeting is to be held "*prior to* the initiation of a formal dispute" and before litigation costs are incurred.  (MSA § 19.1, IBM Ex. 1)  Because Carlson has not satisfied Section 19.1, this lawsuit should be dismissed.  *See Cameo Homes v. Kraus-Anderson Constr. Co.*, 394 F.3d 1084, 1088 (8th Cir. 2005) (case dismissed for failure to comply with pre-suit requirement).



███████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

█████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████

█████████████████████

## III.    CARLSON'S FRAUD CLAIMS FAIL.

In addition to the reasons set forth above, Carlson's fraudulent inducement claim (Count I) and fraud in the performance claim (Count II) should be dismissed because they were not pled with specificity and because they are not actionable under Minnesota law.[4]

### A.    Carlson's Fraudulent Allegations Lack Specificity.

The parties do not dispute that for Carlson's fraud claims to survive, Carlson must allege with specificity the who, what, when, where and how of the supposed fraud. (Resp. 22)  Carlson has not met this pleading requirement.

---

[4]    Carlson concedes that its "fraud in performance" claim is really one for "common law fraud" and thus it must plead "each and every element" of common law fraud.  (Resp. 23)

### 1.   Carlson does not plead <u>who</u> made the statements.

Carlson acknowledges that it does not identify the IBM individuals who purportedly made false statements in its Complaint.  Instead, Carlson argues, without any legal support, that it satisfied Rule 9(b) because it alleges that "IBM *as a company*" made fraudulent statements.  (Resp. 8–9)  Courts have repeatedly held that allegations similar to Carlson's are insufficient.  *See, e.g., Ramada Franchise Sys., Inc. v. Tresprop, Ltd.*, 188 F.R.D. 610, 617 (D. Kan. 1999) (dismissing fraud claim where plaintiff did not identify corporate employee who made misrepresentation); *Douros v. State Farm Fire & Cas. Co.*, 508 F. Supp. 2d 479, 486 (E.D. Va. 2007) (similar); *Helleloid v. Indep. Sch. Dist. No. 361*, 149 F. Supp. 2d 863, 879 (D. Minn. 2001) (plaintiff must allege *which employees* made misrepresentations).

### 2.   Carlson does not plead <u>which</u> IBM statements were false or <u>how</u>.

Carlson argues that IBM committed fraud in performance because its monthly invoices included charges for "work IBM had not performed."  (Resp. 19-20)  Carlson then directs IBM (and the Court) to all 48 pages of Exhibit A for "specific detail" of the fraud.  (*Id.* 21)  Yet, out of the dozens of statements included in Exhibit A, *not one* identifies a particular invoice, let alone states what is supposedly fraudulent in that invoice.  Carlson's general allegation – that something, somewhere in the four years of monthly invoices is fraudulent – is a textbook example of inadequate pleading under Rule 9(b).  *See Martens v. Minn. Mining & Mfg. Co.*, 616 N.W.2d 732, 747-48 (Minn. 2000) (affirming dismissal of inadequately pleaded fraud claims); *U.S. ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 557 (8th Cir. 2006) (same).

Carlson's fraudulent inducement claim is similarly deficient since Carlson has not pled which of IBM's alleged statements were false or how they were false.[5] *See Trooien v. Mansour*, 608 F.3d 1020, 1029 (8th Cir. 2010) (dismissing fraud allegations under Rule 9(b) for failing to state "how [] revenue projections amounted to an untrue statement of 'past or present material fact'"). Carlson's allegation that IBM eventually "delivered the opposite" of what it promised (Compl. ¶ 15) does not, in any way, speak to how IBM's alleged promises were false when made.

### 3.   Carlson does not plead **when** the fraudulent acts occurred.

Carlson did not plead when IBM's supposed fraudulent acts occurred. *See, e.g., In re TMJ Implants Prods. Liab. Litig.*, 872 F. Supp. 1019, 1038 (D. Minn. 1995) (dismissing fraud claims where plaintiff failed to allege *when* fraudulent acts occurred).

███████████████████████████████████████

███████████████████████████████████████

██████████████████

With respect to its fraud in performance claim, Carlson argues that it has satisfied the "when" pleading requirement by pointing *generally to four years of invoices*. (Resp. 19–21) However, none of the cases Carlson relies on support its argument. For example, in Carlson's first cited case, *Bale v. Dean Witter Reynolds, Inc.*, 627 F. Supp. 650, 652

---

[5]   In its Response, Carlson now contends that the statements alleged in Complaint Paragraphs 9 and 13 were false. (Resp. 6-8) However, it is not permissible to allege a statement is "false" for the first time in a response brief. *See Morgan Distrib. Co., Inc. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989) ("[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss").

(D. Minn. 1986), the court did not even analyze the sufficiency of the plaintiffs' fraud allegations. Instead, because the court compelled arbitration, it found it would "make little sense" to dismiss the Complaint when "the sufficiency of plaintiffs' allegations is best left" to the arbitrators. *Id.* at 653 n.1.

Carlson next relies on *Axcan* and *McGregor*, both cases involving false-advertising allegations where the allegedly misrepresented fact was the same over the life of an advertising campaign.[6] *Axcan Scandipharm Inc. v. Ethex Corp.*, 585 F. Supp. 2d 1067, 1083-84 (D. Minn. 2007) (alleging that defendants advertised their products consistently as "generic equivalents" for years); *McGregor v. Uponor, Inc.,* 2010 U.S. Dist. LEXIS 162, at *7-14 (D. Minn. Jan. 4, 2010) (advertising the same way for six years that its products were "carefully engineered" and had "undergone thorough testing to pass strict quality standards"). In contrast to those cases, the monthly invoices at issue here contain different information, regarding different charges, for different services.[7] *See United States ex rel. Alsaker v. CentraCare Health Sys., Inc.*, 2002 WL 1285089, at * 3–4 (D. Minn. June 5, 2002) (the burden to plead fraud allegations rests with the plaintiff,

---

[6]   Carlson similarly relies on *Laysar v. State Farm Mut. Auto. Ins. Co.*, where the defendant allegedly misrepresented the same fact over a period of time. 2005 U.S. Dist. LEXIS 45252, at *8–9 (D. Minn. Aug. 25, 2005) (alleging defendant fraudulently represented its insurance policies provided "full glass coverage" from 1999 to 2005).

[7]   Interestingly, Carlson also cites *Evangelical Lutheran Church v. Spherion Workforce LLC*, 2005 U.S. Dist. LEXIS 8098 (D. Minn. May 4, 2005) to support its theory. (Resp. 21) That case, however, demonstrates the deficiencies in Carlson's pleading since the *Evangelical* court found that plaintiff had satisfied the "when" requirement by pointing to "specific incidents, such as a March 6, 2002 email." *Id.*

8

not the defendant, even where plaintiffs allege a "general practice of fraud that covers an extensive period of time"). Carlson's bare allegation that IBM's invoices from "2006 through 2009" (Compl. ¶ 32) were false does not come close to satisfying the requisite level of specificity.

IBM should not be left to guess to which of the allegations in Carlson's 70 pages of pleadings it must respond or prepare a defense. Such a result is not permitted by Rule 9(b) and Carlson's fraud claims should be dismissed. *See Commercial Prop. Inv., Inc. v. Quality Inns Int'l*, 61 F.3d 639, 644 (8th Cir. 1995) (a main purpose of Rule 9(b) is to "facilitate a defendant's ability to respond and to prepare a defense to charges of fraud").

## B.   Carlson Has Not Adequately Pled Scienter.

To properly state a fraud claim, Carlson must allege facts that IBM knowingly made a false statement, or asserted a statement as within its knowledge without knowing whether it was true or false. *Martens*, 616 N.W.2d at 747; *Trooien*, 608 F.3d at 1029. The Minnesota Supreme Court has further held that to state a valid fraudulent inducement claim a plaintiff must plead facts showing that the defendant had no intention of fulfilling the promises when made. *Martens*, 616 N.W.2d at 747. Carlson has pled no such facts and, for this independent reason, its fraud claims should be dismissed.

### 1.   Fraudulent inducement.

Carlson's fraudulent inducement claim is based on IBM's supposed promises about future services. (Resp. 6-8) However, the Complaint lacks any factual allegation that IBM did not intend to fulfill its promises when it made them. *Martens*, 616 N.W.2d at 747-48 (dismissing fraud claim where complaint was "devoid of any specific claim

9

that appellant's statements were representations the appellant knew were false or has no intention of fulfilling at the time they were made").

Carlson attempts to evade this fatal deficiency by arguing that Carlson "now knows IBM's representations were false." (Resp. 11) That a statement is "subsequently found to be contradicted by 'later-discovered facts' does not render the statement 'fraudulent'" when made. *See McGregor*, 2010 U.S. Dist. LEXIS 162, at *11. Because Carlson does not allege facts that IBM did not intend to fulfill its promises, Carlson's fraudulent inducement claim should be dismissed. *See Lieberman v. A&W Restaurants, Inc.*, 2003 WL 21252008, at *9 (D. Minn. May 28, 2003) (dismissing fraud claim where plaintiff failed to allege that defendant did not intend to perform); *Martens*, 616 N.W.2d at 747-48 (similar).

### 2.    Fraud in performance

Carlson has not properly pled scienter with respect to its fraud in performance claim. Indeed, the Complaint simply recites the legal standard that "[o]n information and belief, IBM knew or should have known" that its invoices were false, or sent them "without regard to whether they were true or false." (Compl. ¶ 34) Despite Carlson's argument that it may allege scienter generally (Resp. 22), its conclusory allegations – ***without any factual support*** – are insufficient as a matter of law to state a claim. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2008) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Zaun v. J.S.H. Inc.*, 2010 WL 3862860, at *3 (D. Minn. Sept. 28, 2010) (dismissing plaintiff's

complaint where his allegations are "mere recitals of the elements of his causes of action, supported by conclusory statements").

## C.   Carlson's Fraudulent Inducement Claim Fails For Additional Reasons.

Carlson's fraudulent inducement claim fails for the two additional reasons.

### 1.   Carlson alleges nonactionable statements of quality.

Carlson's fraudulent inducement claim relates to IBM's statements about the quality of its services and capabilities. (Compl. ¶ 9) Such "[s]ubjective statements of superiority" are not actionable under Minnesota law. *Bernstein v. Extendicare Health Servs., Inc.*, 653 F. Supp. 2d 939, 942-43 (D. Minn. 2009). In response, Carlson relies exclusively on a 1971 case where the Eighth Circuit attempted to "predict what the Minnesota Supreme Court would decide." *Clements Auto. Co. v. Serv. Bureau Corp.*, 444 F.2d 169 (8th Cir. 1971). Since then, the Minnesota Supreme Court has spoken. And that Court, as well as courts from the past three decades that have interpreted Minnesota law, make it clear that expressions of confidence are ***not*** actionable in fraud. *See Valspar Refinish, Inc. v. Gaylord's, Inc.*, 764 N.W.2d 359, 368 (Minn. 2009) (holding a mere "expression of confidence" that a problem would be resolved was an inactionable prediction of future results); *see also Nelson v. Meshbesher, Singer & Spence, Ltd.*, 1989 WL 131600, at *1 (Minn. Ct. App. Nov. 7, 1989) (must allege more than statements of superiority); *LensCrafters, Inc. v. Vision World, Inc.*, 943 F. Supp. 1481, 1498 (D. Minn. 1996) (a party that states it uses the "most advanced equipment available" is not making a fraudulent misrepresentation); *Bernstein*, 653 F. Supp. 2d at

11

942-43 (upholding dismissal of plaintiffs' consumer fraud claim where statements relied upon were "akin to puffery").

Notably, the *Clements* court does not discuss the now well-established rule that representations regarding "superiority," or "quality," or confidence in future results are inactionable. In fact, the *Clements* decision – which significantly pre-dates *Valspar, Bernstein, Nelson* and *Lenscrafters* – does not mention that doctrine at all. Instead, the *Clements* case analyzed whether representations regarding a machine's capabilities were actionable. As described in the lower court's *Clements* opinion, the defendant represented it would:

- Produce "weekly sales reports";

- Produce a "typed copy of [an] invoice"; and

- Use the "Flexowriter" system, which "produce[s] punched paper tape." *Clements Auto Co. v. Service Bureau Corp.*, 298 F. Supp. 115, 120–21 (D. Minn. 1969).

The Eighth Circuit held that these statements were actionable for two reasons. First, Minnesota courts at the time "traditionally held manufacturers to a high[er] standard with respect to statements about their products." *Clements*, 444 F.2d at 181. Second, the parties could verify whether the product was living up to its promised capabilities. *Id.*

In stark contrast, the representations at issue in this case do not relate to any product's current capabilities but instead to IBM's confidence in the quality of its services:

12

- "IBM's capabilities . . . can not be surpassed . . . ." (Compl. ¶ 9)

- "For nearly 100 years, the IBM name has stood for trust and integrity in all that we do." (*Id.*)

In short, if any one citation "speaks volumes" (Resp. 14), it is Carlson's decision to rely exclusively on *Clements*. Not only does that case pre-date the now well-established line of cases holding that expressions of confidence regarding future services are not actionable, it is not on point.

### 2.    Carlson has not alleged reasonable reliance.

Carlson maintains that it reasonably relied on IBM's representations, despite its admitted due diligence prior to entering into the MSA. (Resp. 18)  Carlson's argument has been rejected by the Minnesota Supreme Court.

> When a party conducts an independent factual investigation before it enters into a commercial transaction, that party cannot later claim that it reasonably relied on the alleged misrepresentation.

*Valspar*, 764 N.W.2d at 368.  Interestingly, Carlson again relies on the 1971 *Clements* decision to support its theory.  But even the *Clements* court recognized the importance of looking to the "relative knowledge of the parties" when analyzing reliance.  *Clements*, 444 F.2d at 184.

In any event, the unsophisticated-party defense is not available here.  Carlson's own pleadings reveal that prior to entering the contract it:

- "Conducted an in-depth due diligence review of IBM, site visits and reference checks";

- "Engaged a leading consultant on outsourcing, Technology Partners International, to assist in the selection process and in setting up this outsourcing arrangements";

13

- "Proposed and negotiated detailed Service Level Agreements ('SLAs') and statements of work ('SOWs')." (Ex. A to Compl. at 7)

Carlson's sophisticated level of due diligence – which included engaging a "leading consultant on outsourcing" – far exceeds that executed by the plaintiff in *Valspar* and, for this additional reason, its fraudulent inducement claim should be dismissed. *See Valspar*, 764 N.W.2d at 368; *Nelson*, 1989 WL 131600.

## IV.   CARLSON'S FIDUCIARY DUTY FRAUD CLAIM SHOULD BE DISMISSED.

Carlson's fiduciary duty claim fails for two reasons:  (1) Carlson has not pled *fraudulent* inducement into a fiduciary relationship and *fraudulent* breach with particularity; and (2) IBM was not Carlson's fiduciary as a matter of law or contract.

### A.   Carlson Failed To Plead Its Fraudulent Inducement And Fraudulent Breach Of Fiduciary Duties Claims With The Requisite Specificity.

As with its other fraud claims, Carlson must plead "fraudulent inducement into a fiduciary relationship" and "fraudulent breach of fiduciary duty" with specificity as required by Rule 9(b).  The Complaint, however, does not include any specific factual allegations of how IBM fraudulently induced Carlson into a fiduciary relationship.  Nor does Carlson explain what, when or how IBM supposedly defrauded Carlson. (Compl. ¶¶ 49-57)  Accordingly, for the same reasons discussed above, Carlson's fiduciary duty claims based on fraudulent conduct should be dismissed.

**B.** **IBM Was Not Carlson's Fiduciary.**

    **1.** **The parties agreed they were not fiduciaries.**

In their contract, IBM and Carlson – two sophisticated and well-established companies – agreed several times that they were "independent contractors" and not each other's agents:

- "[T]he Parties intend to create an ***independent contractor relationship***. Nothing in this Agreement shall operate or be construed as making [the parties] . . . ***agents or employees*** of or with the other." (MSA § 8.2(a), IBM Ex. 1)

- "IBM, in furnishing services to Carlson . . . is acting as an ***independent contractor***. . . . Except as expressly provided in this Agreement, ***IBM is not an agent of Carlson*** . . . and has no right, power or authority, expressly or impliedly, to represent or bind Carlson . . . as to any matters, except as expressly authorized in this Agreement." (MSA § 21.6, IBM Ex. 1)

Minnesota courts recognize these types of contract provisions as controlling and find that a fiduciary relationship does not exist when such language is used. *Children's Broad. Corp. v. Walt Disney Co.*, 245 F.3d 1008, 1021-22 (8th Cir. 2001); *Best Buy Stores, L.P. v. Developers Diversified Realty Corp., LLC*, 636 F. Supp. 2d 869, 889 (D. Minn. 2009).

Carlson attempts to get around the clear contract language by arguing that the MSA does not disclaim a fiduciary relationship but only addresses agency.[8] (Resp. 31)

---

[8] Carlson tries to avoid the dispositive effect of this contractual disclaimer by pointing to cherry-picked statements from IBM's (and another company's) website. (Resp. 35-36) By publishing materials on a website, IBM is not entering into a fiduciary relationship with Carlson (or with everyone who visits its website for that matter). *See Kriegel v. Bank of America, N.A.*, 2010 WL 3169579, at *12–13 (D. Mass. Aug. 10, 2010) (statements from website advertisements do not create a fiduciary

However, the court addressed this issue in *Children's Broadcasting* and held that a disclaimer of a "principal-agent relationship" precludes a "claim for breach of fiduciary duties." *Id.* 245 F.3d at 1021–22. Carlson's additional argument that even if the parties did disclaim an agency relationship they did not do so "in toto" is again inconsistent with the contract language. MSA § 8.2(a) clearly states "*[n]othing in this Agreement* shall operate or be construed" as making Carlson and IBM agents of or with the other. *Id.* (emphasis added). Moreover, the parties did not just disclaim an agency relationship – they also agreed IBM was acting as an "independent contractor." (*Id.*)

Carlson cites *Best Buy Stores*, 636 F. Supp. 2d 869, to support its position. But the court's holding in that case supports dismissal in this case. The court held that the parties were not in a fiduciary relationship because (1) they were "sophisticated business entities that engaged in arms-length commercial transactions," and (2) they "*explicitly disclaimed a fiduciary relationship*" through their written agreement that they were not principal and agent. *Id.* at 888–89 (emphasis added).

Finally, Carlson argues that the disclaimer was not designed to speak to the parties' relationship partly because that contract section is entitled "IBM Personnel Are Not Carlson Employees." (Resp. 30)  This is a strange argument since in a different section of its Response, Carlson argues that it should be the "content," not title, that controls. (Resp. 24)  In any event, Carlson's argument ignores MSA § 21.6 ("Relationship of Parties"), which uses the same preclusive language, and MSA § 21.5

relationship).  However, the Court can not even consider these exhibits since they are entirely outside the pleadings. (*supra*, footnote 2)

("Headings"), which states that MSA headings "shall not be considered in the interpretation of this Agreement."

### 2.   Minnesota law does not support a fiduciary relationship.

The parties' agreement that they were acting independently and were not each other's agents is consistent with Minnesota law, which does not recognize a fiduciary relationship where two sophisticated companies are in an arms-length business relationship. *See, e.g.*, *Hope v. Klabal*, 457 F.3d 784, 792 (8th Cir. 2006) (finding no fiduciary duty where party admitted to being a "sophisticated business person"); *Petters Co. Inc. v. Stayhealthy, Inc.*, 2005 WL 1430295, at *6 (D. Minn. Mar. 7, 2005) (finding no fiduciary duty where "sophisticated parties" entered into "arms-length agreements"); *RBC Dain Rauscher, Inc. v. Fed. Ins. Co.*, 2003 WL 25836278, at *12 (D. Minn. Dec. 2, 2003) (dismissing fiduciary duty claim where plaintiff only alleged a fiduciary relationship existed because it had confidence and a long-standing relationship); *Northstar Indus., Inc. v. Merrill Lynch & Co., Inc.*, 558 F. Supp. 2d 944, 948 (D. Minn. 2008) (dismissing fiduciary duty claim where parties were "sophisticated business entities" even though plaintiff "chose to rely on and trust" defendant), *rev'd on other grounds*, 576 F.3d 827 (8th Cir. 2009).

Indeed, the cases Carlson cites only highlight the difference between possible fiduciary relationships and the IBM/Carlson relationship. For example, those courts found fiduciary relationships may exist between:

- An expert real estate developer and a recent college graduate with no experience in the real estate market. *Bloomquist v. Wisdom Dev. Grp.*, 2009 Minn. App. LEXIS 296 (Minn. Ct. App. Jan. 13, 2009).

17

- A trustee with legal training and a woman who turned over "complete control" of her financial affairs to the trustee. *Toombs v. Daniels*, 361 N.W.2d 801 (Minn. 1985).

- Insurer and insured. *E.g.*, *Busher v. Brown & Brown, Inc.*, 2009 LEXIS App. 955 (Minn. Ct. App. Aug. 25, 2009); *Stark v. Equitable Life Assur. Soc.*, 285 N.W. 466 (Minn. 1939).

Tellingly, most of the cases Carlson cites do not involve two sophisticated businesses, let alone two major corporations that conducted extensive due diligence prior to entering into the agreement. (MSA Preamble at 6, IBM Ex. 1) And not one of Carlson's cases involved a situation where the two companies also contractually agreed that they did not have an agency relationship. This makes sense since "[o]rdinary business relationships may involve reliance on a professional, a degree of trust, and a duty of good faith, and yet not fall within the class of fiduciary relationships." *St. Paul Fire & Marine Ins. Co. v. A.P.I., Inc.*, 738 N.W.2d 401, 406 (Minn. Ct. App. 2007).

Here IBM and Carlson are two sophisticated companies that entered into a business arrangement where they agreed that IBM was Carlson's independent contractor and not its agent. Thus, as a matter of law, Carlson has not and cannot state a claim that IBM was its fiduciary, and its fraudulent fiduciary duty claims should be dismissed. *See, e.g.*, *Northstar Indus.*, 558 F. Supp. 2d at 947–48 (D. Minn. 2008) (granting motion to dismiss for failure to allege fiduciary relationship where parties were sophisticated business entities); *RBC Dain Rauscher,* 2003 WL 25836278, at *12 (D. Minn. May 11, 2005) (granting motion to dismiss fiduciary duty claim and noting a plaintiff must allege more than legal conclusions, and this is "especially" so when "'special circumstances' are

required to establish a fiduciary relationship"); *Todd County v. Barlow Projects, Inc.*, 2005 WL 1115479, at *10 (D. Minn. May 11, 2005) (granting motion to dismiss fiduciary duty claim).

## V.   CARLSON'S DECLARATORY JUDGMENT CLAIM IS NOT PERMITTED BY THE MSA.

Carlson entirely ignores IBM's argument that Carlson's declaratory judgment claim is premature under the MSA.  Indeed, Carlson does not even acknowledge MSA § 12.3, which states that Carlson may only seek a set-off against an "amount that IBM is obligated to pay Carlson hereunder."  IBM currently owes Carlson nothing.  Therefore, Carlson cannot now seek to set off the amount it presently owes IBM against some imaginary obligation that IBM could incur in the future.  *See In re Am. Commercial Lines, Inc.*, 781 F.2d 114, 116 (8th Cir. 1985) (holding declaratory judgment is not proper where the proposed judgment is speculative or unlikely); *Metro Motors, LLC v. Nissan Motor Corp. in USA*, 170 F. Supp. 2d 888, 890 (D. Minn. 2001) (same).

## CONCLUSION

For the foregoing reasons, IBM respectfully requests that this Court grant its

Motion to Dismiss Carlson's Complaint and any other relief it deems just and proper.


Dated: November 4, 2010                    Respectfully Submitted,

                                   By:   /s/ Jerry W. Blackwell
                                         Jerry W. Blackwell, Minn. Bar 186867
                                         Alyssa L. Rebensdorf, Minn. Bar 296478
                                         BLACKWELL BURKE P.A
                                         431 South Seventh Street, Suite 2500
                                         Minneapolis, MN 55415

                                         Steve McCormick, P.C.
                                         Anne McClain Sidrys, P.C.
                                         Christa C. Cottrell
                                         KIRKLAND & ELLIS LLP
                                         300 North LaSalle Street
                                         Chicago, IL 60654

                                         *Attorneys for Defendant IBM Corp.*

20