UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Carlson, Inc.,

    Plaintiff,

v.

International Business Machines Corporation,

    Defendant.

Civil No. 10-3410 (JNE/TNL)
MEMORANDUM
**(FILED UNDER SEAL)**

---

Martin R. Lueck, Esq., and Christopher A. Seidl, Esq., Robins, Kaplan, Miller & Ciresi L.L.P., appeared for Plaintiff Carlson, Inc.

Anne McClain Sidrys, Esq., and Christa C. Cottrell, Esq., Kirkland & Ellis LLP, and Jerry W. Blackwell, Esq., Blackwell Burke P.A., appeared for Defendant International Business Machines Corporation.

---

This is an action by Carlson, Inc., against International Business Machines Corporation (IBM) for fraud, breach of contract, and breach of fiduciary duties. Carlson also seeks declaratory relief. The case is before the Court on IBM's Motion to Dismiss the First Amended Complaint. For the reasons set forth below, the Court grants in part and denies in part the motion.

## I. BACKGROUND

The Court summarizes the allegations of the First Amended Complaint. In 2004, Carlson decided to improve and transform its business processes, including its finance and accounting (F&A) and information technology (IT), and to install an Enterprise Resource Planning system. Carlson considered undertaking the effort internally or outsourcing it.

IBM was among those considered by Carlson. IBM responded to Carlson's Request for Information and Request for Proposal on February 15, 2005, and May 11, 2005, respectively. In its responses, IBM made the following representations:

- "IBM believes that we can provide Carlson with a solution that fully meets your overall objectives in terms of savings, business transformation, speed, quality, controls, service levels, employee sensitivity and future flexibility."

- "After evaluating Carlson's requirements, as well as subsequent information that was made available to us through the mutual value sessions, IBM has developed a comprehensive approach and solution for the outsourcing of Carlson's Information Technology. Our approach will satisfy the current needs and will position Carlson to take advantage of potential business opportunities, realignments, and emerging technologies."

- "Through our knowledge, gained in the MVD sessions, we have designed an approach and solution which we believe will optimize Carlson's efficiency goals while maintaining the required balance of quality and risk. The overall solution is designed to further allow Carlson to transform its F&A function and deliver a more effective, value-added service to Carlson's key stakeholders for business unit finance and operating units."

- IBM "would continue the transformation of the finance and accounting operations using the numerous tools and techniques from our consulting expertise and by applying the operational scale and excellence of our BTO delivery organization."

- "Success in achieving target savings and results is not an option with IBM; it is a given."

- IBM's "value proposition to Carlson will include providing equal to or higher quality service at a lower cost than the client can deliver internally."

- "IBM's proposed solution will accelerate the transformation of Carlson's IT operations."

- "IBM is the only company able to provide leading expertise in all of the scope areas under consideration."

- "IBM is uniquely positioned to deliver the full scope described in the RFI and thus the selection of IBM as a single vendor will mitigate or eliminate the potential adverse impact on Carlson . . . ."

Carlson ultimately decided to outsource and selected IBM to undertake the effort. In August 2005, Carlson and IBM entered into a Master Services Agreement effective September 1, 2005. The Agreement was to last ten years.

Dissatisfied with the F&A services provided by IBM, Carlson commenced the termination of all F&A services and certain IT functions in 2007. Pursuant to an amendment to the Agreement, Carlson took back the services and functions effective January 1, 2008. After giving notice in 2009, Carlson eventually took back all services provided by IBM. After taking back the services, Carlson assessed IBM's performance. According to Carlson, IBM charged Carlson for work that was not performed.

By letter dated May 14, 2010, Carlson notified IBM of Carlson's claims under Section 19.1 of the Agreement, which addresses informal dispute resolution and general dispute resolution procedures. Carlson offered to meet with IBM to attempt to resolve the parties' dispute. Carlson suggested that the process take no more than 30 days. If IBM agreed to engage in the dispute resolution process and declined to drop its demand for payment of sums withheld by Carlson, then Carlson asked that the process be expedited. By letter dated June 17, 2010, IBM responded by denying Carlson's claims, demanding the sums withheld by Carlson, and offering to meet.

A short time later, IBM informed Carlson that IBM would not send the annual IBM request for proposals to hotels owned, leased, managed, or franchised by Carlson's wholly-owned subsidiaries, and that the hotels would be excluded from the opportunity to obtain normal meetings-and-events business. In late June 2010, Carlson wrote to IBM, asserted that Carlson was not compelled to pursue the Agreement's dispute resolution procedures in light of IBM's violations of its good faith obligations, and offered to meet voluntarily. The next month, Carlson

commenced this action. Count I of the First Amended Complaint is a claim for fraudulent inducement. In Count II, Carlson asserts fraud in performance. Count III is a claim for breach of contract. Carlson claims breach of fiduciary duties in Count IV. Count V seeks declaratory relief.

## II.   DISCUSSION

"In addressing a motion to dismiss, '[t]he court may consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record.'" *Mulvenon v. Greenwood*, No. 10-1957, 2011 WL 2272134, at *3 (8th Cir. June 10, 2011) (alteration in original) (quoting *Mills v. City of Grand Forks*, 614 F.3d 495, 498 (8th Cir. 2010)). To the extent the parties have submitted matters outside the pleadings, the Court excludes the matters and considers IBM's motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 12(d).

In ruling on IBM's Rule 12(b)(6) motion, the Court accepts the facts alleged in the First Amended Complaint as true and grants all reasonable inferences in favor of Carlson. *See Crooks v. Lynch*, 557 F.3d 846, 848 (8th Cir. 2009). Although a pleading is not required to contain detailed factual allegations, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

### A.   Section 19.1

IBM asserts that the Court should dismiss the First Amended Complaint because Carlson did not fulfill its contractual obligation to undertake pre-suit dispute resolution. Subject to

certain exceptions, Carlson and IBM agreed in Section 19.1 of the Master Services Agreement to attempt to resolve any dispute informally before initiating formal dispute resolution procedures. Section 19.1(a) provides:

> The Parties agree that the Carlson Project Executive and the IBM Account Executive shall attempt in good faith to resolve all disputes (other than those described in Section 19.1). In the event the Carlson Project Executive and the IBM Account Executive are unable to resolve a dispute in an amount of time that either Party deems reasonable under the circumstances, such Party may refer the dispute for resolution to the senior corporate executives specified in Section 19.1(b) below upon written notice to the other Party. In connection with or prior to such escalation, the Parties may mutually agree to engage a neutral third party to assist them in negotiating and resolving the dispute.

Section 19.1(b) states:

> The Parties will attempt to resolve disputes escalated under Section 19.1(a) by referring the matter to Carlson's chief financial officer and IBM's Strategic Outsourcing Vice President, Travel and Transportation Industry. These designated senior corporate executives will confer as often as they deem reasonably necessary in order to gather and furnish to the other all non-privileged information with respect to the matter in issue which the Parties believe to be appropriate and germane in connection with its resolution. The designated senior corporate executives shall discuss the problem and negotiate in good faith in an effort to resolve the dispute without the necessity of any formal proceeding. The specific format for the discussions will be left to the discretion of the designated senior corporate executives, but may include the preparation of agreed-upon statements of fact or written statements of position.

In this case, Carlson gave written notice to IBM of Carlson's claims. In the event that IBM was unwilling to satisfy Carlson's payment demand, Carlson offered to meet with IBM before filing an action and to jointly engage a mediator. Carlson stated that the process should take no longer than 30 days and asked IBM to promptly contact Carlson to coordinate the process. In the event that IBM declined to drop its demand for payment of sums withheld by Carlson, Carlson asserted that the process should be expedited under Section 12.4(e) of the

Master Services Agreement.[1] IBM did not respond within 30 days to Carlson's request for either a dispute resolution process that took no more than 30 days or an expedited dispute resolution process. Accepting the facts alleged in the First Amended Complaint as true and granting all reasonable inferences in Carlson's favor, the Court concludes that dismissal of the First Amended Complaint based on Carlson's alleged failure to engage in informal dispute resolution before bringing this action is not warranted.

### B.    Fraud in performance

IBM asserts that Carlson's claim for fraud in performance should be dismissed because Carlson failed to plead it with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure. Rule 9(b) states: "In alleging fraud . . . a party must state with particularity the circumstances constituting fraud . . . ."

> Under Rule 9(b), a plaintiff must plead "such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." In other words, the party must typically identify the "who, what, where, when, and how" of the alleged fraud. This requirement is designed to enable defendants to respond "specifically, at an early stage of the case, to potentially damaging allegations of immoral and criminal conduct." The level of particularity required depends on, *inter alia*, the nature of the case and the relationship between the parties. "Conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." Rule 9(b) should be read "in harmony with the principles of notice pleading."

*BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007) (citations omitted); *see Drobnak v. Andersen Corp.*, 561 F.3d 778, 783 (8th Cir. 2009). A plaintiff that alleges a systematic practice of the submission of fraudulent claims over an extended period of time need not allege specific details of every fraudulent claim. *United States ex rel. Joshi v. St. Luke's*

---

[1]    In Section 12.4(e), IBM and Carlson agreed "to expedite the dispute resolution process set forth in Article 19 with respect to payment disputes."

*Hosp., Inc.*, 441 F.3d 552, 557 (8th Cir. 2006). Instead, the plaintiff must allege some representative examples of the fraudulent conduct with particularity. *Id.*

In the First Amended Complaint, Carlson explained how IBM billed Carlson in monthly invoices. Carlson identified the invoices, the invoice dates, IBM's project executive on each date, the amounts charged by IBM, and the date of payment by Carlson. Carlson identified the services that IBM allegedly did not perform in 2006 and 2007; those that IBM allegedly did not perform in 2008; and those that IBM allegedly did not perform in 2009. IBM allegedly failed to disclose that it had not performed the services notwithstanding its submission of the monthly invoices to Carlson. Having reviewed the First Amended Complaint, the Court concludes that Carlson has pleaded its claim for fraud in performance with the requisite particularity. The Court denies IBM's motion to dismiss the claim pursuant to Rule 9(b).

## C.     Fraudulent inducement

Carlson claims that IBM fraudulently induced Carlson to enter into the Master Services Agreement. IBM contends the claim should be dismissed because Carlson failed to plead an actionable misrepresentation or reasonable reliance.

To succeed on its claim, Carlson must prove:

> (1) a false representation by [IBM] of a past or existing material fact susceptible of knowledge; (2) made with knowledge of the falsity of the representation or made without knowing whether it was true or false; (3) with the intention to induce [Carlson] to act in reliance thereon; (4) that the representation caused [Carlson] to act in reliance thereon; and (5) that [Carlson] suffered pecuniary damages as a result of the reliance.

*Valspar Refinish, Inc. v. Gaylord's, Inc.*, 764 N.W.2d 359, 368 (Minn. 2009). "[T]he false representation must be about a past or existing material fact susceptible of knowledge." *Id.* "A misrepresentation may be made either (1) by an affirmative statement that is itself false or (2) by concealing or not disclosing certain facts that render the facts that are disclosed misleading."

*M.H. v. Caritas Family Servs.*, 488 N.W.2d 282, 289 (Minn. 1992). A representation as to a future act does not necessarily provide the basis for a fraud claim:

> It is a well-settled rule that a representation or expectation as to future acts is not a sufficient basis to support an action for fraud merely because the represented act or event did not take place. It is true that a misrepresentation of a present intention could amount to fraud. However, it must be made affirmatively to appear that the promisor had no intention to perform at the time the promise was made.

*Vandeputte v. Soderholm*, 216 N.W.2d 144, 147 (Minn. 1974). A fraud claim cannot be based on predictions, opinions, sales puffery, or general and indefinite statements. *See Martens v. Minn. Mining & Mfg. Co.*, 616 N.W.2d 732, 747 (Minn. 2000); *Berryman v. Riegert*, 175 N.W.2d 438, 443 (Minn. 1970); *Dollar Travel Agency, Inc. v. Nw. Airlines, Inc.*, 354 N.W.2d 880, 883 (Minn. Ct. App. 1984).

In response to IBM's assertion that it failed to plead an actionable misrepresentation, Carlson relies heavily on *Clements Auto Co. v. Service Bureau Corp.*, 444 F.2d 169 (8th Cir. 1971). In *Clements*, the defendant provided data processing services to the plaintiff, the services proved to be unsatisfactory to the plaintiff, and the plaintiff brought suit. 444 F.2d at 174. The district court denied recovery on all grounds asserted except fraudulent misrepresentation. *Id.* at 174-75. The district court found that the defendant "had made one central actionable misrepresentation to [the plaintiff], i.e., that the proposed data processing system would, when fully implemented, be capable of providing [the plaintiff] sufficient information in a form such that when properly utilized, it would constitute an effective and efficient tool to be used in inventory control." *Id.* at 175. Although the statement was, in a sense, "a prediction of what the system will do," the court of appeals also regarded it as "a statement of the inherent capabilities of a particular product." *Id.* at 181. After noting that "Minnesota decisions have traditionally held manufacturers to a high standard with respect to statements about their products" and

8

reviewing relevant authorities, the court of appeals concluded that "there was sufficient evidence from which the trial court could determine that the statement was one of fact rather than opinion and could reasonably have been relied upon as such." *Id.* at 181-82. In addition, "the fact that there were a number of specific representations made which were ancillary to and supportive of the main representation support[ed the Eighth Circuit's] view that, taken as a whole, the statements were factual rather than mere predictions." *Id.* at 182.

> [The defendant] was found to have made representations concerning the error-control features of the system it designed, the suitability and capabilities of the Friden Flexowriters, the input device it suggested and the usefulness of the weekly sales reports as a tool for management by exception. Each of these representations were statements of existing fact dealing with the inherent capabilities of the system designed by [the defendant]. To a large extent, the accuracy of these more fundamental statements was essential to the validity of [the defendant's] representation that its system would be a useful tool for inventory control.

*Id.*

The Court is not persuaded that by Carlson's reliance on *Clements*. The alleged misrepresentations on which Carlson bases its claim for fraudulent inducement, quoted above in the background, consist of predictions, opinions, sales puffery, or general and indefinite statements. Accordingly, the Court dismisses Carlson's claim for fraudulent inducement.[2]

### D.     Breach of fiduciary duties

IBM asserts that Carlson's claim for breach of fiduciary duties should be dismissed because the parties were not in a fiduciary relationship and because Carlson failed to plead a breach of fiduciary duties. "A fiduciary relationship exists 'when confidence is reposed on one side and there is resulting superiority and influence on the other; and the relation and duties involved in it need not be legal, but may be moral, social, domestic, or merely personal.'"

---

[2]     In light of this conclusion, the Court need not consider the parties' arguments regarding Carlson's alleged failure to plead reasonable reliance.

*Toombs v. Daniels*, 361 N.W.2d 801, 809 (Minn. 1985) (quoting *Stark v. Equitable Life Assurance Soc'y*, 285 N.W. 466, 470 (Minn. 1939)). "Such a relationship transcends the ordinary business relationship which, if it involves reliance on a professional, surely involves a certain degree of trust and a duty of good faith and yet is not classified as 'fiduciary.'" *Carlson v. SALA Architects, Inc.*, 732 N.W.2d 324, 331 (Minn. Ct. App. 2007). "The existence of a fiduciary relationship is a question of fact." *Toombs*, 361 N.W.2d at 809. "[W]hile a relationship might not be fiduciary per se, the facts of the case might create such a relationship." *Carlson*, 732 N.W.2d at 331. Accepting the facts alleged in the First Amended Complaint as true and drawing all reasonable inferences in Carlson's favor, the Court concludes that Carlson has adequately pleaded the existence of a fiduciary relationship between Carlson and IBM and IBM's breach of fiduciary duties. The Court denies IBM's motion insofar as it relates to Carlson's claim for breach of fiduciary duties.

E.   **Amendment 15**

IBM maintains that the Court should dismiss Counts I, II, III, and IV of the First Amended Complaint with respect to all ITO services performed before October 1, 2006, because Amendment 15 to the Master Services Agreement released such claims. Release is an affirmative defense. Fed. R. Civ. P. 8(c)(1). Nevertheless, the defense may provide the basis for a dismissal pursuant to Rule 12(b)(6) under certain circumstances. *Citibank Global Mkts., Inc. v. Rodríguez Santana*, 573 F.3d 17, 23 (1st Cir. 2009) ("Release is an affirmative defense, and such a defense will support a motion to dismiss only where it is (1) definitively ascertainable from the complaint and other sources of information that are reviewable at this stage, and (2) the facts establish the affirmative defense with certitude." (citations omitted)); *cf. Noble Sys. Corp. v. Alorica Cent., LLC*, 543 F.3d 978, 983 (8th Cir. 2008) ("If an affirmative defense such as a

privilege is apparent on the face of the complaint, however, that privilege can provide the basis for dismissal under Rule 12(b)(6)."). *But see Deckard v. Gen. Motors Corp.*, 307 F.3d 556, 560 (7th Cir. 2002) ("A motion to dismiss was improper since release is an affirmative defense, and the existence of a defense does not undercut the adequacy of the claim." (citation omitted)). The clauses addressed in the unpublished cases cited by IBM in its initial memorandum differ from the language that appears in Amendment 15. Having considered the parties' arguments, including those in the memorandum that Carlson seeks leave to file,[3] the Court declines, at this early stage of the litigation, to dismiss Carlson's claims on the basis of Amendment 15.

**F.     Declaratory relief**

Carlson seeks a declaration that "based on IBM's conduct and the circumstances of this case, Carlson is entitled to set off against IBM's Charges and escrow disputed funds . . . and that Carlson is not in breach of any provision of the Agreement based on such set off and escrow of disputed funds." IBM asserts that Carlson's claim for declaratory relief should be dismissed because it is not ripe. According to IBM, the Master Services Agreement provides that Carlson may only seek a set off against amounts that IBM is obligated to pay Carlson. "Unless and until Carlson wins judgment in its favor and is awarded damages," IBM argues, "IBM is not obligated to pay Carlson anything." Consequently, IBM maintains that Carlson's claim for declaratory relief is not ripe.

A federal court may declare the rights of interested parties "[i]n a case of actual controversy." 28 U.S.C. § 2201(a) (2006). "In general, an actual controversy is 'a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Diagnostic Unit Inmate Council v. Films*

---

[3]     The Court grants Carlson's motion for leave to file the memorandum.

11

*Inc.*, 88 F.3d 651, 653 (8th Cir. 1996) (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)); *see Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 671 (9th Cir. 2005) (concluding "that the appropriate standard for determining ripeness of private party contract disputes is the traditional ripeness standard," i.e., that of *Maryland Casualty*). Here, IBM contends that Carlson owes approximately $13 million under the Master Services Agreement. Carlson has not paid IBM this amount, and Carlson has invoked a right to a set off under the Master Services Agreement. IBM disputes Carlson's assertion of a right to a set off, and IBM claims that Carlson is in breach of contract by asserting the set off. Under the circumstances of this case, the Court rejects IBM's argument that the claim for declaratory relief is not ripe.[4] *Cf. Pub. Water Supply Dist. No. 8 v. City of Kearney*, 401 F.3d 930, 932 (8th Cir. 2005) ("Whether the factual basis of a declaratory judgment action is hypothetical—or more aptly, too

---

[4]  The circumstances presented in the sole case cited by IBM in its initial memorandum in support of its ripeness argument, *In re American Commercial Lines, Inc.*, 781 F.2d 114 (8th Cir. 1985), differ from those at issue here. In *American Commercial Lines*, a chemical was released from a barge. 781 F.2d at 115. The chemical's owner sought a declaration that the barge operator had to indemnify the chemical's owner for any liability and expenses incurred while defending claims of third parties. *Id.* at 115-16. The court of appeals concluded that there was no controversy between the parties:

> In this case, there is no immediate controversy between the parties because it is not certain [the chemical's owner] will ever have to pay any judgment arising from the barge accident. [A third party's] claim, the one claim filed against [the chemical's owner], was dismissed. Moreover, [the chemical's owner] did not present any evidence to indicate that other claims were likely to arise. Absent any claims being made or a substantial probability that such claims will be made, the requisite controversy is lacking under the Declaratory Judgment Act.

*Id.* at 116.

   The Court observes that "[t]he Declaratory Judgment Act is 'an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant.'" *Roark v. S. Iron R-1 Sch. Dist.*, 573 F.3d 556, 561-62 (8th Cir. 2009) (citation omitted) (quoting *Pub. Serv. Comm'n v. Wycoff Co.*, 344 U.S. 237, 241 (1952)). An adjustment to whatever money damages are demonstrated in this case might accomplish much of what Carlson seeks via declaratory relief.

hypothetical—for purposes of the ripeness doctrine (and concomitantly Article III) is a question of degree.").

### III.   CONCLUSION

In short, the Court grants in part and denies in part IBM's motion. The Court dismisses Carlson's claim for fraudulent inducement. The Court will issue a separate order that is consistent with this Memorandum.

Dated:  July 8, 2011

s/ Joan N. Ericksen  
JOAN N. ERICKSEN  
United States District Judge
